The Atchison, Topeka & Santa Fe Railroad
Company v. John H. Whitbeck.

No. 8881.

1. Injury in Railroad Yards — *company not liable for, from usual and inevitable dangers; must be negligence.* A railroad company cannot be held liable for injuries received by a person who goes into one of its yards lawfully, merely because such yard is a dangerous place. It must be shown that it is unnecessarily dangerous through the act or omission of the company, and that the injury resulted from the negligence or wrongful act of the company or its employes.

2. Instructions as to Gross Negligence — *and wanton injury where no evidence to warrant, reversible error.* Instructions should be framed to meet the facts of the case on trial; and in an action against a railroad company to recover for injuries received in moving cars at a stock yard, where cattle were being loaded, it is error for the court to instruct with reference to gross negligence and wanton and malicious injury, where the evidence of negligence on the part of the company is weak, and where there is no testimony indicating gross negligence or wanton misconduct.

3. Case-made — *attached to petition in error filed in time, Supreme Court may permit affixing of seal though year to bring error expired.* Where a case-made is settled and signed in due time, and the signature of the judge is attested by the signature of the clerk, but the seal of the trial court is omitted, permission being obtained from this Court more than one year after the rendition of the judgment complained of, the seal may be attached to the attestation by the custodian thereof, and the petition in error will not be dismissed for want of the attestation. While affixing the seal is essential to a proper authentication of the record, where the case was in fact settled by the trial judge in due time, the mere authentication of the judge's signature by the seal is a formal matter of proof, which may be furnished after the expiration of the time limited for bringing cases to this Court.

*Error from Osage District Court.*
*Hon. William Thomson, Judge.*

Reversed and Remanded.  Opinion Filed March 6, 1897.

*A. A. Hurd* and *Stambaugh & Hurd*, for plaintiff in error.

*David Overmyer*, for defendant in error.

ALLEN, J.   John H. Whitbeck brought suit against the Railroad Company to recover for injuries received by him while loading stock for shipment at the stock-yards in Larned.   It appears that he had engaged cars for two car-loads of cattle which he wished to ship, and that he and other shippers, who also had stock, went to the stock-yards with the yardmaster for the purpose of loading the cattle.   The train which was to take them out was due at 11 o'clock at night, but was four hours late.   They commenced loading after dark, on a dark, windy and dusty night. There were two chutes for loading.   After two cars had been loaded they proceeded to move the last car away from one chute past the other; and for that purpose the plaintiff took a position on the side of the car next the yard, placing his shoulder against an upright piece, projecting from the side of the car, to push.   As the car passed the platform at the second chute his overcoat caught on the platform, and when the car — the door of which projected out further than the balance of the side of the car — came along, it crushed him between the door and the platform, breaking his collar bone and some of his ribs.   The petition charges that the defendant refused and neglected to place the cars for loading; that the yardmaster required the plaintiff and other shippers to assist him in placing the cars; that the plaintiff objected to doing so, but, owing to the necessity of getting the cattle loaded and in obedience to the directions of the yardmaster, he did take hold of the cars to place them for loading, and that he was injured while so doing.   The petition then alleges "that the said yardmaster, then and there being an employe of, and in the service of, said

defendant Company, carelessly and negligently failed
and omitted to give plaintiff any notice, or warning,
whatever, respecting the dangerous proximity of said
platform to said car when in motion.'' The answer
of the defendant was a general denial, and also a spe-
cial verified denial of the authority of the yardmas-
ter, as agent of the Company, to require the plaintiff
to place cars for loading. The defendant objected to
the introduction of any evidence, on the ground that
the petition did not state facts sufficient to constitute
a cause of action ; and also demurred to the evidence
offered by the plaintiff at the trial. Error is alleged
in these rulings.

It must be conceded that the averments of negli-
gence in the petition are very meager. It is not
charged that the platform at the stock chute was dif-
ferently constructed from those generally used, nor
that it was unnecessarily dangerous ; although it is
stated that the space between the door of the car and
the platform was too narrow for plaintiff's body. It
cannot be said that the petition shows that the plat-
form was improperly constructed, or unnecessarily
dangerous. The only negligence directly charged is
in the refusal of the Company's agent to have the cars
placed, for loading, by the engine, and in the failure of
the yardmaster to inform the plaintiff of the danger-
ous proximity of the platform to a passing car. As
against an objection to the introduction of testimony,
we think the petition stated a cause of action. The
testimony disclosed some other facts, bearing on the
question of negligence, which were not pleaded ;
among them, the darkness of the night, and the ab-
sence of lights about the yards to enable the men to
see and appreciate the danger of the situation. It
cannot be said that there was an entire absence of

proof to support the plaintiff's claim; nor can it be declared, as a matter of law, that the plaintiff, though an experienced shipper of stock, accustomed to loading cattle at railroad yards, voluntarily assumed the risk which resulted in his injury. These were matters to be tried and determined by the jury under proper instructions.

At the request of the plaintiff, six instructions were given; which were excepted to by the defendant. Error is assigned on the second, third, fourth, fifth and sixth of these. The second concluded as follows:

"And if you find from the evidence that such premises were in such condition as to be dangerous in the ordinary course of business, as transacted, either to those having a right by the express or implied invitation of the Company to come and be upon said premises, and the plaintiff received said injuries by reason of said dangerous condition of said premises in the ordinary course of the transaction of business there, and without neglect on his part while he was upon proper business there, and upon the invitation of the defendant, expressed or implied, then the Company is liable to him in this action and your verdict must be for the plaintiff."

The fourth instruction, after preliminary statements with reference to the circumstances of the case, contains the following:

"The defendant owed to him a duty of protection against danger incident to said premises when used, as aforesaid, for loading stock and placing cars for stock; and, if there was danger incident to said use and occupation of said premises, as aforesaid, it was the duty of the defendant to warn or notify the plaintiff of such danger."

The fifth instruction contains the proposition:

"If at the time he was injured, he was unfamiliar with said premises, and did not know of the danger-

ous condition thereof, when used as hereinbefore stated in these instructions, then he was guilty of no neglect in putting his shoulder to the car and in pushing there, as it is claimed he did when injured.''

The sixth instruction reads as follows :

''If the defendant was doing a general business with the public at and upon said stock yard at Larned, and if, according to the usual course and conduct of such business, it was the practice and custom of shippers to go to and upon said yard and premises, and assist in loading cars, and in placing cars for loading, then the defendant by that course of business invited the public to come there, and was under a duty to guarantee the public safety while there, and the defendant was under a duty and obligation to exercise the greatest diligence to see that no injury should befall any person thus invited to said place by the conduct and action of the defendant, and not to do so by the defendant would constitute gross negligence upon the part of the defendant.''

Each of these instructions is erroneous. They base liability on the maintenance by the Company of dangerous conditions in its yard, and its failure to protect the plaintiff therefrom. This is a novel theory of the law. The tracks and yards of railroad companies, over and through which cars are propelled, are, of necessity, places of danger ; and the companies are not chargeable with any guilt or wrong whatever merely because a railroad yard is dangerous, for danger is necessarily incident to railroad service, as now developed and understood. To impose liability on the Company, something further must be shown. It must appear that it has done what it ought not to have done, or, has neglected to do what it ought to have done, and has thereby unnecessarily increased

1. Injury from inevitable danger, company not liable.

the danger and caused injury to the plaintiff. This idea is entirely excluded from the instructions asked and given. The authorities cited by counsel for the defendant in error are not applicable to this case. They refer to the maintenance of conditions unnecessarily dangerous, which the party ought not to have suffered. In this case, dangers necessarily incident to the operation of a railroad and to the loading of stock at a stock-yard are treated as culpable, and made a basis of liability against the Company.

The fifth instruction is bad, in that it takes from the jury the question of contributory negligence on the part of the plaintiff, and charges, in effect, that he was not guilty of negligence.

The sixth instruction asked is most faulty of all; because it charges that the Company was bound to guarantee the public safety while engaged about the stock-yards, that it was required to exercise the greatest diligence to see that no injury should befall any person invited there, and that a failure to do so would constitute gross negligence. The instructions given by the Court, of its own motion, are unnecessarily prolix and contain many errors. It was

2. Instruction as to gross negligence error, when.

unnecessary and improper, under the evidence in this case, to define and comment on the various degrees of negligence. Either party, if guilty of any negligence, was guilty of ordinary negligence, only. There was not a particle of testimony indicating gross negligence on the part of the defendant; and there was no occasion for a comparison of degrees of care in this case, nor can it with propriety ever be done in any case.

The fifth of these instructions is to the effect that, if the negligence of the defendant was gross, the plain-

tiff need not be wholly free from negligence in order to recover.   This was erroneous, and inapplicable to the facts.

The seventh instruction is faulty in that it implies that, in order to prevent a recovery, the negligence of the plaintiff must have been nearly equal in degree to that of the defendant.   If his negligence contributed to the injury, and but for it the injury would not have happened, he could not recover.

The eighth instruction was improper because not warranted by the facts.   The thirteenth and seventeenth instructions are faulty in that they refer to gross negligence.   The eighteenth instruction is even worse, because it speaks of wantonly reckless conduct wilfully and maliciously done.   The nineteenth is equally bad.   In other instructions the law was correctly stated, with sufficient fullness, and with reference to the case actually on trial ; but the instructions above referred to were fundamentally wrong and misleading.

When the petition in error and case-made were filed in this court, the certificate of the judge settling the case was attested by the signature of the district clerk, only.   The seal of the Court was not affixed to it.   The record remained in this condition until a motion was made to dismiss for want of proper authentication, long after the expiration of one year from the date of the judgment.   The plaintiff in error thereupon asked leave to withdraw the record for the purpose of having the seal attached.   Permission was granted to do so, and the record was accordingly withdrawn, and returned with the seal of the Court appearing properly affixed.   A motion is now made to dismiss the case on the ground that the Court is with-

Railroad Co. v. Whitbeck.

out jurisdiction; that the seal of the trial court is an indispensable requisite to the authentication of the case-made; that the time within which the record may be filed in this Court is limited to one year after the rendition of the judgment; that when that year expired there was no valid record here, and that thereafter it was too late to supply the omission. It is, also, now insisted that since the case-made was settled there has been a change of clerks of the District Court of Osage County, and that the successor of the clerk who attested the judge's signature has no right to affix the seal, and that it does not appear who in fact did affix it.

A change of officers does not affect the case. The seal of the court is presumed to always remain with its proper custodian, and it must be presumed that its use is always by his authority and under his direction; otherwise a seal would never furnish any evidence of authenticity in any case. It is true that the statute requires the attestation by the clerk with the seal attached, and that such authentication is indispensable to a valid record. *Carr v. Hudson,* 19 Kan. 474; *Limerick v. Gwinn,* 44 id. 694; *German Reform Church v. Abbey,* 54 id. 766. But the settlement of the case does not date from the attestation by the clerk. Such attestation merely furnishes evidence of the authenticity of the judge's signature. *Pierce v. Myers,* 28 Kan. 364. Although we do not find any case reported in which it has been held that the seal may be attached after the expiration of one year, the point has been decided in a number of cases on motions to dismiss, and it has been uniformly held that the evidence afforded by the seal, of the authenticity

3. Supreme Court may permit attaching of seal to case-made, when.

Railway Co. v. Quinn.

of the record, may be furnished after the expiration of a year from the date of the judgment sought to be reversed.

The motion to dismiss must be overruled; and the judgment of the District Court is reversed, and the cause remanded for a new trial.

All the Justices concurring.